# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 692 | **DATE** | 12/29/2003 |
| **CASE TITLE** | Entertainment, Inc., et al vs. City of Northlake, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motions to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6) are denied because that Rule is inapplicable. Instead, judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is entered in favor of defendants and against plaintiffs.

(11) ■ [For further detail see order attached to the original minute order.]

| | | Document Number |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| x | Notices mailed by judge's staff. | DEC 3 0 2003 |
| | Notified counsel by telephone. | date docketed |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| | | date mailed notice |
| | courtroom deputy's initials | |

U.S. DISTRICT COURT
CLERK

03 DEC 29 PM 3: 2

Date/time received in central Clerk's Office

mailing deputy initials

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ENTERTAINMENT, INC. d/b/a ALL STARS and MICHAEL MICHALS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | No. 03 C 0692 |
| CITY OF NORTHLAKE, an Illinois Municipal Corporation, and JEFFREY SHERWIN, Mayor of Northlake, in his Official and Individual Capacities, | ) ) ) ) ) ) | |
| Defendants. | ) | |

DEC 3 0 2003

### MEMORANDUM OPINION

Before the court are defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motions are denied.

### BACKGROUND

Entertainment, Inc., a nightclub d/b/a All Stars ("All Stars"), and its owner, Michael Michals (together, "plaintiffs"), have brought this 42 U.S.C. § 1983 action against the City of Northlake, Illinois ("Northlake") and its mayor, Jeffrey Sherwin (together, "defendants"), alleging that Northlake's annexation of All Stars' property, and the resulting subjection of All Stars to Northlake's zoning and liquor license ordinances, violates plaintiffs' First, Fifth and Fourteenth Amendment rights.

The following facts, drawn from the complaint and attached

24

exhibits, are taken as true for purposes of this motion.[1] All Stars describes itself as a "Gentleman's Club, which provides adult patrons with partially nude expressive or erotic dancing performances, beverages and alcoholic beverages." Michals is All Stars' president. Since 1995, All Stars has operated from a 21,000-plus square foot nightclub located on an approximately 4.9 acre site which it holds under a lease. All Stars had planned to both remodel its nightclub and to develop an unimproved 2.5 acres on the leased site for expansion.

Plaintiffs contend that Sherwin and other Northlake elected officials developed and implemented a legislative "scheme" - through rezoning, annexation and amortization - to regulate All Stars out of business. As a first step, on February 9, 1998, Northlake enacted three ordinances. The first ordinance created and defined a new "I-3 Special Industrial District," in which adult uses, among others, were permitted ("the I-3 ordinance"). The second ordinance converted a portion of then-existing "I-2 General Industrial District" property to the new I-3 designation ("the I-2 ordinance"). A third ordinance defined adult uses and required that such uses be restricted to the area designated as the I-3 district ("the adult use ordinance").

---

[1] We may consider materials attached to the complaint without converting defendants' motions into summary judgment pleadings. See Doe v. First Nat'l Bank of Chicago, 865 F.2d 864, 873 (7th Cir. 1989).

Next, in January 2000, Northlake began annexing property in unincorporated Cook County that stood between its own borders and the property underlying All Stars. First, on January 3, Northlake adopted an ordinance which authorized Sherwin and the Northlake City Clerk to execute an annexation agreement between Northlake and Norkol, Inc. The ensuing annexation agreement provided Norkol with rebates on the various taxes it would owe Northlake. That same month, Northlake enacted an ordinance forcibly annexing the property underlying Inland Paperboard and Packaging, Inc. Inland initially resisted the annex, but the dispute was eventually settled, with Inland receiving a tax incentive package similar to that given Norkol. The annexation of the Norkol and Inland properties brought Northlake's borders into contiguity with All Stars' property line.

Then, in August 2000, Northlake passed an ordinance which forcibly annexed the property underlying All Stars. Unlike Norkol, and eventually Inland, All Stars was not offered a tax incentive package. Indeed, plaintiffs were unaware of the annexation until they received a letter from Sherwin, dated August 25, 2000, welcoming All Stars to Northlake. The letter reads, in relevant part:

> Welcome to the City of Northlake. Oh August 21, 2000 the City Council approved the annexation ordinance which included your property within the corporate limits of the City. Among the benefits . . . are police protection, licensing, and zoning

and building code matters which are now
administered locally rather than from the
remote county offices in downtown Chicago.

*       *       *

All business licenses, permits and liquor
licenses will be issued through the City of
Northlake. You are requested to make
application for your liquor license and
business license as soon as possible.[2]

Prior to its annexation into Northlake, All Stars was located in an

I-3 General Industrial District of unincorporated Cook County, and

was subject to Cook County's jurisdiction regarding liquor licenses

and adult use zoning. Upon annexation, however, All Stars' site

was zoned in Northlake under an R-1 single family residential

classification (Northlake's most restrictive), even though the site

is surrounded by property zoned as an I-2 Heavy Industrial District

area. All Stars also became subject to the laws of Northlake,

including its zoning and liquor license ordinances.

Plaintiffs allege two injuries from the annexation. First,

under Northlake's zoning ordinances, All Stars is prohibited from

structurally altering or improving its current facilities, thereby

thwarting All Stars' remodeling and expansion plans. Second,

Northlake's liquor licensing ordinance, which is more restrictive

than Cook County's, required All Stars to cut back its hours of

---

[2]The complaint does not allege an exact date on which
Northlake annexed All Stars' property, only that it occurred
sometime in August 2000. We can infer from the complaint,
however, that it was prior to August 25th.

operation. This restriction has "severely reduced" the revenue received by All Stars.

Lastly, in what plaintiffs characterize as "a final attempt to eliminate . . . All Stars," Northlake officials, including Sherwin, have "recently recommended for adoption an ordinance that would render All Stars subject to an amortization deadline requiring that All Stars terminate business at its current location and which leaves as the only possible location for All Stars to relocate, the . . . I-3 zoning district . . . ." However, the I-3 zoning district is, according to plaintiffs, legally unavailable. Within 1000 feet of each parcel in the I-3 District sits a public nursing home and/or a public park and/or a cemetery, and state law prohibits the operation of adult entertainment facilities within 1000 feet of such properties. In addition, plaintiffs allege that the I-3 District is unsuitable for adult uses because the area is accessible only by a single private road which is crowded 24 hours a day with semi-tractor trucks.

In support of its overriding allegation that Northlake's legislative measures (the three ordinances enacted in February 1998, the ordinances annexing the Norkol and Inland properties in January 2000, the ordinance annexing All Stars' property in August 2000, the resulting application of Northlake's more stringent zoning and liquor license ordinances, and finally, the "recommended" amortization ordinance) were enacted as part of a

scheme to shut down All Stars, plaintiffs refer to an article authored by Sherwin and published in a September 2002 Northlake newspaper. The article, titled "Gentlemen's Club," states:

> Originally, the property on which the gentlemen's club is located was in unincorporated Cook County. The County's zoning had allowed this club to flourish. Campaign donations were made to the Cook County Sheriff. City of Northlake officials had heard rumors that this club was planning to expand and that the County was going to allow this to happen. To prevent this, we took aggressive steps to surround the club with land incorporated in the City of Northlake through annexations. If Northlake could surround the club, it could then be forcibly annexed into the City and the expansion plans would be halted as the property would be a "non-conforming" use. We were successful in doing so, and forcibly annexed this property in 2001. However, one of the other property owners who was annexed brought a lawsuit against the City protesting this action. This litigation was finally settled on August 23, 2002, allowing the City Council to take action against this club. At the August 19th City Council meeting, the City Council directed the City's attorney to draft an ordinance ending the club's non-conforming use within 12 months, which means that the club must cease operating within that time. This cancer of corruption must be cut out of our community. I fully expect the City Council to approve this action at the September meeting.

Michals read this article sometime in September 2002.[3]

---

[3]Although the article states that Northlake "forcibly annexed [All Stars'] property in 2001," we take as true the complaint's allegation (re-affirmed in plaintiffs' response brief) that the annexation occurred in August 2000.

On January 30, 2003, plaintiffs filed a twenty-three count 42 U.S.C. § 1983 complaint against Northlake and Sherwin alleging myriad constitutional violations: Northlake's legislative "scheme" encroaches on All Stars' First Amendment rights of free speech (Counts I and II), constitutes an unconstitutional prior restraint on All Stars' exercise of free speech, also in violation of the First Amendment (Counts IX and X), violates the Fifth and Fourteenth Amendments' equal protection clauses (Counts III and IV), as well as those Amendments' substantive (Counts V and VI) and procedural (Counts VII and VIII) due process requirements; Northlake's granting Norkol and Inland more favorable tax treatment than that offered All Stars constitutes "unequal taxation" in violation of the Fifth and Fourteenth Amendments' equal protection and due process clauses (Count XI); Northlake's adult use ordinance, on its face, is both arbitrary and capricious (Counts XII and XIII) and void for vagueness (Counts XXII and XXIII) in violation of the Fourteenth Amendment's due process clause and, as applied, denies plaintiffs' substantive and procedural due process rights under that clause (Counts XIV and XV); Northlake's enactment of the All Stars annexation ordinance was *ultra vires*, and the ordinance violates plaintiffs' Fourteenth Amendment equal protection and due process rights (Counts XVI and XVII); and finally, Northlake's enactment of the I-3 ordinance was *ultra vires*, the ordinance is arbitrary and capricious in violation of

the Fifth and Fourteenth Amendments' equal protection and due process clauses (Counts XVIII and XIX), and constitutes "special legislation" in violation of the Fourteenth Amendment's equal protection and due process clauses (Counts XX and XXI). All claims, except the "unequal taxation" charge, are pled in two counts, with the first seeking a declaratory judgment and the second, an injunction (the "unequal taxation" claim seeks only declaratory relief). Defendants now move to dismiss the complaint in its entirety pursuant to Rule 12(b)(6).[4]

## STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of all facts alleged in the pleadings, construe all allegations liberally, and view them in the light most favorable to the plaintiff. See Hickey v. O'Banhon, 287 F.3d 656, 657-58 (7th Cir. 2002). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. See id. at 657. In other words, if it is possible to

---

[4]Before proceeding ahead, we note (only incidentally, in light of our ruling) that plaintiffs' equal protection and due process claims, to the extent they seek relief under the *Fifth* Amendment, are misplaced. That Amendment does guarantee due process and equal protection rights, but only against encroachment by federal officials. See Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Because this suit alleges constitutional deprivations by state officials, relief should have been sought solely under the Fourteenth Amendment.

hypothesize a set of facts that would entitle a plaintiff to relief consistent with the complaint's allegations, dismissal of the plaintiff's claims under Rule 12(b)(6) is not warranted. <u>See</u> <u>Graehling v. Village of Lombard</u>, 58 F.3d 295, 297 (7th Cir. 1995).

### DISCUSSION

Defendants meet each of the twenty-three counts in the complaint with multiple challenges including "failure to state a claim," statute of limitations, standing, and immunity arguments. We take up defendants' statute of limitations argument first, because, if accepted, it disposes of the complaint in its entirety.

The parties do not dispute that section 1983 claims arising in Illinois are governed by a two-year limitations period. <u>See</u> <u>Licari v. City of Chicago</u>, 298 F.3d 664, 667-68 (7th Cir. 2002).[5] Our first task, then, is to determine when the statute of limitations clock began to run, or, when plaintiffs' claims *accrued*. Defendants argue that plaintiffs' claims accrued on August 7, 2000, the date they proffer as the date of enactment of the All Stars annexation ordinance, or at the latest, on August 25,

---

[5]Section 1983 does not provide its own statute of limitations. However, in <u>Wilson v. Garcia</u>, the Supreme Court filled that legislative gap by holding that section 1983 claims should be treated as personal injury claims for statute of limitations purposes. <u>See</u> 471 U.S. 261, 276-80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Thus, we apply to plaintiffs' claims the personal injury statute of limitations in the state where the alleged injury occurred. <u>See</u> <u>id.</u> Because plaintiffs' alleged injury occurred in Illinois, its two-year personal injury statute of limitations governs this case. <u>See</u> 735 ILCS 5/13-202.

2000, when plaintiffs received notice of the annexation. Under either proposed accrual date, plaintiffs' January 30, 2003 complaint would be untimely by at least five months. Plaintiffs counter that their claims did not accrue until at least September 2002, when Michals read the Northlake newspaper article containing Sherwin's stated intent to shut down All Stars. If plaintiffs are correct, then their claims are timely.

Federal law governs the accrual of section 1983 claims. See Wilson v. Giesen, 956 F.2d 738, 740 (7th Cir. 1992). And under federal law, "a claim accrues when all its elements have come into existence." Cathedral of Joy v. Vill. of Hazel Crest, 22 F.3d 713, 717 (7th Cir. 1994). More specific to this case, since "every constitutional tort actionable under § 1983 is treated as a personal injury, . . . the claim [accrues] when the injury is inflicted." Diaz v. Shallbetter, 984 F.2d 850, 855 (7th Cir. 1993).

Here, plaintiffs' injury occurred when All Stars' property was annexed, in August 2000, because it was then that plaintiffs became subject to Northlake's more stringent zoning and liquor license ordinances. Plaintiffs allege no subsequent events that changed the terms of the annexation or the newly-applicable ordinances, or their applicability to plaintiffs. Put another way, if the challenged ordinances and annexations are unconstitutional now, then they were just as unconstitutional in August 2000.

Thus, plaintiffs' injury occurred in August 2000.[6]

Of course, as plaintiffs point out, that is not the end of it – under the discovery rule, we must also consider when plaintiffs became *aware* of their injury. An exception to general accrual principles, the discovery rule is read into state statutes of limitation in federal question cases, and "postpones the beginning of the limitations period of a federal claim from the date the party is injured to the date when the party discovers or should have discovered the injury, exercising reasonable diligence." Cathedral of Joy, 22 F.3d at 717. For section 1983 claims, then, the discovery rule will delay accrual, if at all, until "the plaintiff knows or should have known that his

_____

[6]Plaintiffs also allege injury from Sherwin's "recommendation" of an amortization ordinance, conduct which may have occurred as late as August or September 2002. However, it is by now axiomatic that a constitutional challenge to an ordinance which does not yet exist, even if anticipated, does not raise a present case or controversy under Article III of the Constitution. See Los Angeles v. Lyons, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); Tobin v. Illinois State Bd. of Elections, 268 F.3d 517, 527 (7th Cir. 2001). Thus, because the allegation based on the "recommended" ordinance is not ripe for review, it cannot support an actionable injury in 2002, nor can it somehow extend plaintiffs' concrete injury sustained in August 2000.

On a related note, even if plaintiffs had alleged some lag time (they do not) between All Stars' subjection to Northlake's laws and Northlake's enforcement of those laws against All Stars, their injury would still be fixed at the time that the allegedly adverse governmental decision was made, in August 2000, and not at some later time when the effects (here, reduced revenues from earlier closing hours and thwarted expansion plans) of that decision were felt. See Cathedral of Joy, 22 F.3d 713, 719; see also Delaware State College v. Ricks, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

constitutional rights were violated." <u>See</u> <u>Licari</u>, 298 F.3d at 668 (<u>citing</u> <u>Wilson</u>, 956 F.2d at 740).

Our discussion here can be brief. Plaintiffs themselves allege that, by August 25, 2000, they knew that their property had been annexed and that their business had become subject to the laws of Northlake. Further, the exercise of "reasonable diligence," by any measure, would have revealed to plaintiffs the specifics of the Northlake ordinances, which were publicly available. It appears, therefore, that the discovery rule only gets plaintiffs as far as August 25, 2000.

Plaintiffs, however, contend that they still could not have known of their claims until September 2002 because it was not until then that they realized the challenged annexations and ordinances were "all part of a premeditated scheme to put All Stars out of business," or put simply, that Northlake's actions were "wrongfully caused." (<u>Pls.' Resp.</u>, p. 5.)

Plaintiffs' position might have some merit *if* a culpable state of mind was a necessary element to section 1983 claims challenging the constitutionality of local government legislation. Were that the case, then prior to their September 2002 "discovery," it is at least arguable that plaintiffs could not have been charged with full knowledge of their injury. But it is clear that the motives of a legislator, however wrongful, are of no moment to the constitutionality of a legislative act. In <u>United States v.</u>

O'Brien, the Supreme Court, relying on "settled principles," held that legislative motive could not be a basis for declaring legislation unconstitutional:

> It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive. As the Court long ago stated: 'The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted.' McCray v. United States, 195 U.S. 27, 56, 24 S.Ct. 769, 776, 49 L.Ed. 78 (1904).

391 U.S. 367, 383, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

This principle was later applied by the Seventh Circuit in DiMa Corp. v. Town of Hallie, where an adult bookstore owner claimed that a municipal ordinance regulating the book store's use was unconstitutional because evidence showed that the law was passed out of a desire to close down the bookstore. See 185 F.3d 823, 828 (7th Cir. 1999). Citing O'Brien, the Seventh Circuit had no trouble turning down plaintiff's argument:

> We can reject DiMa's first argument rather easily . . . [A]ttacking the ordinance because it was enacted by persons with "impure hearts" gets DiMa nowhere. The actual motives of those who enacted the ordinance are irrelevant to our First Amendment analysis . . .
>
> *       *       *
>
> [W]e do not ask whether the motives of the Board can be justified . . . but

> rather whether the ordinance itself can
> be so justified.

Id. at 828-29 (citations omitted).

Thus, although plaintiffs may not have "discovered" defendants' motives until September 2002, that discovery, *ipso jure*, adds nothing to their injury that had been ripe for adjudication two years earlier.

Really, we have no discovery rule issue at all, because there was nothing essential to discover – all of the facts necessary for plaintiffs to proceed with their present complaint were known to them, or within their immediate reach, as of August 25, 2000. Instead of a failure to discover the injury, it appears that we have a failure to recognize that the injury might be actionable. Yet where, as here, plaintiffs were aware of the facts necessary to make a claim, a lack of comprehension of the legal *significance* of those facts (or, perhaps more aptly, a lack of diligence in seeking a lawyer's opinion) will not delay the running of the limitations clock.[7]

---

[7]This point was made by the Supreme Court in United States v. Kubrick:

> We are unconvinced that for statute of
> limitations purposes a plaintiff's ignorance
> of his legal rights and his ignorance of the
> fact of his injury or its cause should receive
> identical treatment. That he has been injured
> in fact may be unknown or unknowable until the
> injury manifests itself; and the facts about
> causation may be in the control of the putative
> defendant, unavailable to the plaintiff or at

Beyond the discovery rule, plaintiffs advance four additional theories as to why the statute of limitations has not run on their claims. We address each in turn. First, plaintiffs maintain that, under the "continuing violation doctrine," their claims accrued no earlier than September 2002. This doctrine, like the discovery rule, is an exception to the general rules governing accrual and allows a plaintiff to seek relief for otherwise time-barred acts by linking them with an act that occurred within the limitations period. See Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992). Under the doctrine, all claims will be deemed to have accrued when the last act accrues. The rationale for this rule is that in some cases, it is unreasonable to require a plaintiff to sue separately for each act that is part and parcel of a "continuing wrong." See Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir. 2001) ("A violation is called 'continuing,' signifying that a plaintiff can reach back to its beginning even if that beginning lies outside its statutory limitations period, when it would be

---

> least very difficult to obtain. The prospect
> is not so bleak for a plaintiff in possession
> of the critical facts that he has been hurt
> and who has inflicted the injury. He is no
> longer at the mercy of the latter. There are
> others who can tell him if he has been
> wronged, and he need only ask.

444 U.S. 111, 122, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct."). The exception, however, does not apply to cases in which "the harm is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." Wilson, 956 F.2d at 743.

This exception gets plaintiffs nowhere. Application of the doctrine requires, in the first instance, that a plaintiff's complaint be timely as to at least one alleged unlawful act. See Malhotra v. Cotter & Co., 885 F.2d 1305, 1310 (7th Cir. 1989). The doctrine will not resuscitate claims *all* of which are otherwise time-barred; it merely provides a practical solution for a plaintiff who, though filing part of his claim in a timely manner, could not have been expected to file separate suits on all of his prior claims. Here, plaintiffs must make some allegation of *actionable* conduct (*i.e.*, not just a recommended ordinance) occurring after January 30, 2001, two years prior to the date of their complaint. Plaintiffs have not (nor could they have) satisfied this requirement.

Plaintiffs' next two theories – equitable estoppel and equitable tolling – add a new wrinkle to our analysis. Unlike the discovery rule and continuing violation doctrines, which each affect when the limitations period commences, equitable estoppel and equitable tolling generally come into play only after a claim has accrued, and suspend, or "toll," the running of the limitations

period. The Seventh Circuit has explained the two doctrines as follows:

> A defendant who through misleading
> representations or otherwise prevents the
> plaintiff from suing in time will be
> estopped to plead the statute of
> limitations. This is equitable estoppel.
> But even when the defendant is faultless,
> if plaintiff, because of disability,
> irremediable lack of information, or other
> circumstance beyond his control just cannot
> reasonably be expected to sue in time, the
> statute of limitations will be tolled until
> he is able through the exercise of proper
> diligence to file his suit. This is
> equitable tolling.

Miller and AMF v. Runyon, 77 F.3d 189, 191 (7th Cir. 1995). We address equitable estoppel first. That doctrine applies where the defendant takes active, affirmative steps to prevent the plaintiff from timely bringing suit. See Shropshear v. Corp. Counsel of the City of Chicago, 275 F.3d 593, 595 (7th Cir. 2001). It presupposes that the plaintiff has discovered, or should have discovered the injury, but "denotes efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time." Id.

Plaintiffs proffer two acts by defendants which allegedly prevented them from timely asserting their claims. First, plaintiffs argue that the August 25, 2000 "welcome" letter was misleading because it espoused the "benefits" of All Stars' annexation into Northlake and omitted the true intent of the annexation – to put All Stars out of business. We need not tarry

long here. Drawing all inferences in plaintiffs' favor, as we must, we still find nothing in this letter that reasonably could be construed as containing any misrepresentations which would prevent plaintiffs from suing on time. Quite the contrary, the letter served as a clear warning to plaintiffs that they were then subject to the laws of Northlake, the same laws which they now contest.

Turning to plaintiffs' second proof, "[p]laintiffs would testify that after they learned that the property had been annexed into the City of Northlake, they, along with counsel, met with Defendant Sherwin (The Mayor of Northlake), and he assured the Plaintiffs that the City had no intention of interfering with their business." (Pls.' Resp., p. 11.) In rebuttal, defendants raise the procedural argument that because plaintiffs' assertion is not contained in the complaint, and raised for the first time in its response brief, it should be disregarded under the rule that "the complaint may not be amended by the briefs in opposition to a motion to dismiss." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984). The rule, while alive and well, is inapt. Plaintiffs are not amending. Instead, they are merely responding to a statute of limitations argument, an affirmative defense which need not be pre-emptively responded to in a complaint. See Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

Plaintiffs' second proffer, however, fails for a different

reason. Taking the occurrence of the meeting as fact, as we must, we still cannot conceive of any scenario in which the meeting reasonably would have prevented plaintiffs from suing on time. Although plaintiffs do not tell us when the meeting took place, in the end, it does not matter. Suppose the meeting took place following plaintiffs' receipt of the "welcome" letter, but in the days prior to the enforcement of the ordinances (*e.g.*, requiring earlier closing times and forbidding expansion), then, as soon as the ordinances were enforced, plaintiffs were on notice that Sherwin had lied when he said "the City had no intention of interfering with their business." Alternatively, if the meeting occurred *after* the enforcement of the ordinances, then their proffered reliance on Sherwin's statement that he would not interfere with their business would be entirely unreasonable. It had already happened. Either way, as soon as the ordinances were enforced against All Stars (which we understand to be a matter of days, not months, after the annexation), any obstacles that defendants had put in the way of plaintiffs timely filing suit had cleared. From that time on, plaintiffs still had nearly two years remaining before time had run on their claims. Thus, any reprieve that plaintiffs could claim by application of equitable estoppel would be, at best, a matter of days, and not the approximately five months necessary to rescue their claims.

Proceeding then to equitable tolling, this doctrine, unlike

equitable estoppel, does not assume blameworthy conduct by the defendant. Cada v. Baxter Healthcare Corp, 920 F.2d 446, 451 (7th Cir. 1990). Rather, equitable tolling applies when the plaintiff knows he has been injured, but "despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim." Shropshear, 275 F.3d at 595. As explained above, no later than August 2000, plaintiffs had knowledge of, or immediate access to all "vital information," matters of public record, which were necessary to state their claims. Accordingly, this doctrine does not help plaintiffs either.

Finally, plaintiffs argue that because the ordinance annexing All Stars' property is alleged to be unconstitutional from its inception, plaintiffs' claims are not subject to *any* limitations period. If the annexation ordinance was unconstitutional, and therefore void from the onset, it could not have triggered the running of any statute of limitations, or so the argument goes. Although plaintiffs cite several cases, not one supports their novel theory. Plaintiffs' best case, Graf v. Vill. of Lake Bluff, only stands for the proposition that lack of contiguity is the sole exception to the applicability of a statute of limitations to a state claim challenging an annexation; thus, when lack of contiguity exists, the annexation is void *ab initio* and may be challenged at any time. See 321 Ill.App.3d 897, 748

N.E.2d 801, 809 (2d Dist. 2001), rev'd on other grounds, 795 N.E.2d 281 (2003). Plaintiffs' complaint alleges contiguity, thus Graf is way off the mark. Plainly, there is no authority for plaintiffs' position that the applicable statute of limitations somehow vanishes when an annexation is attacked as void under section 1983.

In the end, we return to the inescapable fact that ultimately dooms plaintiffs' claims – they had in their possession on August 25, 2000 sufficient facts to put them on notice that their rights may have been adversely affected such as to warrant further investigation into whether they were entitled to redress. Under such circumstances, the court will not extend defendants' risk of litigation until plaintiffs decide to avail themselves of that opportunity. Accordingly, because all of plaintiffs' claims accrued in August 2000, they are now time-barred under the two-year statute of limitations applicable to section 1983 claims arising in Illinois.

Since the statute of limitations arguments dispose of the complaint in its entirety, we do not reach defendants' other arguments. Yet one housekeeping matter remains. Although defendants moved to dismiss (and plaintiffs responded) pursuant to Rule 12(b)(6), because our decision rests only on statute of limitations grounds, we really do not have a Rule 12(b)(6) issue. Pleading the statute of limitations is an affirmative defense, and as such, may be waived (or forfeited if not pled by defendants).

And because complaints need not anticipate or plead around affirmative defenses (see Gomez, 446 U.S. at 640), we cannot hold that plaintiffs' action fails to state a claim on which relief may be granted solely because it was untimely. See Leavell v. Kieffer, 189 F.3d 492, 494-95 (7th Cir. 1999).

Therefore, since defendants had the opportunity for response that Rule 12(c) requires, and our holding does not depend on any documents beyond the pleadings, we grant defendants a judgment on the pleadings pursuant to Rule 12(c) on the grounds that the complaint, in its entirety, is time-barred. See id. Ease of discussion allowed us to save this issue until the end because it is merely a technical procedural point with no effect on the outcome of the case. A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). See Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998) ("Like Rule 12(b) motions, courts grant a Rule 12(c) motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.") (citation and internal quotations omitted.)

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motions to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) are denied because that Rule is inapplicable. Instead, judgment on the

pleadings pursuant to Fed.R.Civ.P. 12(c) is entered in favor of
defendants and against plaintiffs.

DATE:     December 29, 2003

ENTER:    _____

          John F. Grady, United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ENTERTAINMENT, INC. d/b/a ALL    )
STARS and MICHAEL MICHALS,       )
                                 )
        Plaintiffs,              )
                                 )
    v.                           )
                                 )          No. 03 C 0692
CITY OF NORTHLAKE, an Illinois   )
Municipal Corporation, and JEFFREY )
SHERWIN, Mayor of Northlake, in  )
his Official and Individual      )
Capacities,                      )
                                 )
        Defendants.              )

### JUDGMENT ORDER

For the reasons explained in this court's memorandum opinion of this date, judgment on the pleadings is hereby entered in favor of defendants CITY OF NORTHLAKE and JEFFREY SHERWIN, and against plaintiffs ENTERTAINMENT INC. d/b/a ALL STARS and MICHAEL MICHALS.


DATE:    December 29, 2003


ENTER:   _____
         John F. Grady, United States District Judge